UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                                               No. 14-CR-731-LTS

IVAN COLLADO,

        Defendant.

-------------------------------------------------------x

## MEMORANDUM ORDER

The Court has received Defendant Ivan Collado's motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A). (Docket entry no. 161, the "Motion.") On June 28, 2016, upon pleading guilty, Mr. Collado was convicted on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. section 1951. (Docket entry no. 55.) On December 15, 2016, the Court sentenced him principally to a total of 121 months of imprisonment, to be followed by a three-year supervised release term. (Docket entry no. 69.) Mr. Collado is currently incarcerated at the Federal Correctional Institution Ray Brook ("FCI Ray Brook," a medium security correctional facility in New York) and, according to the Bureau of Prisons ("BOP") website, is currently scheduled to be released from BOP custody on May 3, 2023. BOP, Find an inmate, https://www.bop.gov/inmateloc/ (last visited June 21, 2021).

Mr. Collado, who is 44 years old and who contracted the COVID-19 virus in January 2021 (see docket entry no. 152), seeks immediate release from custody, arguing that his risk of COVID-19 reinfection, his lack of access to proper mental health treatment and services, and his learning disabilities and resulting lack of access to his facility's educational and rehabilitative programs, constitute "extraordinary and compelling reasons" to reduce his sentence. (See Motion at 1-2; see also docket entry no. 166 ("Reply") at 1-5.) On May 6, 2021,

the Government filed its opposition to the Motion. (Docket entry no. 163 ("Opp.").) On May 18, 2021, Mr. Collado submitted his reply. The Court has reviewed the parties' submissions[1] carefully and, for the following reasons, Mr. Collado's Motion is denied with prejudice to the extent it is based on the risks posed by COVID-19, and denied without prejudice to renewal, once Mr. Collado has fully exhausted his administrative remedies, as to Mr. Collado's other proffered bases for a reduction in sentence.

## DISCUSSION

Mr. Collado seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-17). The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" for a sentence reduction warrant such a reduction. The Court may consider "the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction. United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020). "The defendant has the

---

[1] The Court has also considered a letter dated May 19, 2021, from Mr. Collado's fiancée (docket entry no. 168), and the attachments to that letter.

burden to show he is entitled to a sentence reduction" under section 3582(c)(1)(A). United States v. Ebbers, 432 F. Supp. 3d 421, 426 (S.D.N.Y. 2020).

The Court's consideration of the section 3553(a) factors[2] at the time of Mr. Collado's sentencing hearing, on December 15, 2016, is reflected in the transcript of that hearing. (See docket entry no. 70 ("Sentc. Tr.").) As to the nature and circumstances of the offense, the Court considered that Mr. Collado "committed four separate, very violent robberies in the course of his participation in the conspiracy to which he has pled guilty and as to three of those robberies, witnesses reported the brandishing of firearms, victims were beaten and bound and threatened and had their possessions forcibly stolen by Mr. Collado and his crew." (Id. at 45.) Indeed, Mr. Collado "personally brought guns to these robberies," and personally "provided counter-surveillance equipment such as police radio scanners to be used to monitor radio alerts of robberies in progress." (Id.) The Court also recognized, however, that Mr. Collado "grew up in a dangerous and violent neighborhood," and had "intellectual and mental health challenges that are of a significant and extraordinary nature." (Id. at 46.) Having considered those factors, as well as others identified on the record, including Mr. Collado's "long[ ] prior criminal history" and the support of his "very extensive network of family members and friends," the Court

---

[2] The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense." 18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-17).

sentenced Mr. Collado to 121 months of imprisonment, to be followed by a three-year term of supervised release. (Id. at 44-49.) Furthermore, in light of Mr. Collado's intellectual and mental health challenges, the Court included in its judgment a recommendation to the BOP "that the defendant be provided with a thorough mental health evaluation and treatment for his documented cognitive, developmental and mental health issues, including supportive psychotherapy, psycho social rehabilitation and compensatory cognitive training." (Docket entry no. 126 at 2.)

In the nearly five years since Mr. Collado's sentencing, Mr. Collado has been disciplined for three incidents, each within the last two years. (Opp. Ex. B.) However, Mr. Collado also proffers that he has not been "receiving the proper treatment and help with [his] mental disorders and learning disabilities" while in custody (Motion at 1-2), and Mr. Collado's fiancée alleges that Mr. Collado has been subject to mistreatment by prison staff at other BOP facilities, including retaliation stemming from Mr. Collado's reports of misconduct to authorities. (Docket entry no. 168 at 2-4.) The Court considers each of these matters in weighing the applicable section 3553(a) factors in the context of this compassionate release application.

With these reports and the section 3553(a) factors in mind, the Court next considers Mr. Collado's proffered extraordinary and compelling reasons, and whether they warrant a reduction in Mr. Collado's sentence. 18 U.S.C.A. § 3582(c)(1)(A).

Mr. Collado's first basis proffered in support of his motion for a reduction in sentence is the COVID-19 pandemic, its effects on FCI Ray Brook, and the risk that Mr. Collado will be re-infected with the COVID-19 virus. (Motion at 1-2; see also id. at ECF page 4 ("The [C]ovid pandemic presents a serious risk to my health especially considering my age and

weight.")³ However, Mr. Collado's recent contraction of and recovery from COVID-19 indicate a reduced risk of a repeat COVID-19 infection, see United States v. Pena, No. 18-CR-640 (RA), 2021 WL 396420, at *2 (S.D.N.Y. Feb. 4, 2021) ("Although the medical community's understanding of the virus continues to evolve, a number of courts have found that 'a defendant's successful recovery from COVID-19 weighs against granting that defendant compassionate release.'") (citation omitted), and his age (44 years old) does not place him at the greatest risk of severe illness from COVID-19 if he were to become re-infected. See, e.g., United States v. Piña, No. 01-CR-619 (VM), 2021 WL 364192, at *2 (S.D.N.Y. Feb. 3, 2021) ("Furthermore, at fifty-one years old, Piña is not in the 'greatest risk' age group category.") (citing CDC guidance). Moreover, while FCI Ray Brook was once the site of a severe COVID-19 outbreak (see Motion at ECF pages 5-11), that facility currently reports no cases of COVID-19 among its staff and inmates, and the BOP reports that 123 staff and 360 inmates (out of a total of approximately 692 inmates) have been fully vaccinated against COVID-19, BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited June 21, 2021); BOP, FCI Ray Brook, https://www.bop.gov/locations/institutions/rbk/ (last visited June 21, 2021), further reducing Mr. Collado's risk of reinfection from that virus. See United States v. Davis, No. 1:14-CR-296 (PAC), 2021 WL 1016115, at *2-3 (S.D.N.Y. Mar. 17, 2021) ("Davis' risk of reinfection is very small to begin with . . . These vaccinations reduce Davis' risk of reinfection even further."); United States v. Ricketts, No. 3:16-CR-98 (JBA), 2021 WL 917068, at *1 (D. Conn. Mar. 10, 2021) ("[W]ith fellow inmates now being vaccinated, [Mr. Ricketts's] risk of reinfection is

---

³ The Centers for Disease Control and Prevention ("CDC") classify Mr. Collado's body mass index ("BMI") of approximately 31.6 as one which "can" make a person "more likely to get severely ill from COVID-19." CDC, People with Certain Medical Conditions, https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-conditions.html (last visited June 21, 2021).

diminishing."). While the Court recognizes that "[t]he BOP's mitigation measures do not, and cannot, eliminate completely the risk of COVID-19," United States v. Ortega, No. 02-CR-348 (LTS), 2020 WL 3402914, at *3 (S.D.N.Y. June 19, 2020), the Court concludes—in light of Mr. Collado's previous contraction of and recovery from COVID-19, the vaccination efforts underway at FCI Ray Brook, and the absence of reported cases at that facility—that Mr. Collado's risk of reinfection is comparatively small, and is not an extraordinary and compelling reason warranting a reduction in his sentence.

Mr. Collado's remaining bases proffered in support of his Motion are that he is "not receiving the proper treatment and help with [his] mental disorders and learning disabilities" in custody, and that, as a result of his facility's failure to accommodate his learning disabilities, he is not receiving access to the educational and rehabilitative programming available at his facility. (Motion at 1-2; Reply at 2-5.) Furthermore, as noted above, Mr. Collado's fiancée reports that Mr. Collado suffered mistreatment (and retaliation stemming from reports of that mistreatment) while previously incarcerated at FCI Hazelton and FCI Fort Dix (see docket entry no. 168 at 2-3), and that Mr. Collado has filed a civil lawsuit arising from certain of those incidents. See Collado v. Warden et al., No. 20-CV-479 (D.N.J. 2020).

As the Government correctly observes (Opp. at 1 n.1), Mr. Collado has not submitted evidence of having presented any of these issues in connection with his application for compassionate release made to the Warden of FCI Ray Brook, which was limited to the risks posed by the COVID-19 virus. (Motion at ECF page 4.) The Government therefore argues that Mr. Collado has not exhausted his administrative remedies as to those issues, and that the Court should decline to consider them as "premature." (Opp. at 1 n.1.) The Court agrees.

"In enacting and amending the compassionate release provision of Section 3582, Congress expressed unambiguously its intent that the BOP have the opportunity and obligation, in the first instance, to decide whether to move for compassionate release and reduced sentences for eligible inmates." United States v. Chappell, No. 16-CR-512 (LTS), 2020 WL 3415229, at *3 (S.D.N.Y. June 22, 2020). Accord United States v. Williams, 987 F.3d 700, 703 (7th Cir. 2021) (explaining that the purpose of section 3582(c)(1)(A)'s exhaustion requirement is "to provide the Bureau with the information necessary to move for release on a defendant's behalf"); United States v. Alam, 960 F.3d 831, 835 (6th Cir. 2020) (recognizing that prison administrators are well-positioned to "prioritize the most urgent claims" and "investigate the gravity of the conditions supporting compassionate release and the likelihood that the conditions will persist"). In light of that statutory purpose, courts have generally required an inmate to present to the warden of his or her facility the "the same or similar ground for compassionate release" he or she plans to raise in a motion to the court, in order to properly exhaust that ground. Williams, 987 F.3d at 703. See also, e.g., United States v. Gotti, No. 02-CR-743-07 (CM), 2020 WL 7706828, at *2 (S.D.N.Y. Dec. 29, 2020) ("a defendant must show administrative exhaustion with respect to the specific basis for relief upon which he is relying") (collecting cases); United States v. Douglas, No. 10-CR-171-4 (JDB), 2020 WL 5816244, at *2 (D.D.C. Sept. 30, 2020) ("[M]ost courts to consider the issue have concluded that [f]or a petitioner's request to the warden to exhaust administrative remedies in accordance with § 3582(c)(1)(A), the request must be premised on the same facts alleged in the corresponding motion filed with the court.") (internal quotation marks and citations omitted).[4]

---

[4] Some courts, including in this District, have concluded that no such "issue exhaustion" is required under section 3582(c)(1)(A). See, e.g., United States v. Gluzman, No. 7:96-CR-323 (LJL), 2020 WL 4233049, at *10-13 (S.D.N.Y. July 23, 2020), reconsideration

The record before the Court plainly demonstrates that Mr. Collado did not raise in his application to the Warden of FCI Ray Brook, and the BOP was not asked to consider, his alleged lack of adequate mental health treatment and services, his alleged lack of access to educational and rehabilitative programming, or the mistreatment and retaliation he allegedly suffered while in BOP custody. Accordingly, Mr. Collado has not satisfied the exhaustion prerequisite contemplated by section 3582(c)(1)(A) for bringing his compassionate release Motion based on those issues before this Court, and the Court will deny Mr. Collado's Motion, without prejudice to renewal once he has exhausted his administrative remedies, to the extent that it is based on those issues.

CONCLUSION

For the reasons set forth above, Mr. Collado's motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is denied with prejudice to the extent it is based on the threat posed by COVID-19, and without prejudice to renewal, after Mr. Collado has exhausted his administrative remedies, as to all other issues on which he seeks to rely. An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A) will also be entered.

---

denied, No. 96-CR-323 (LJL), 2020 WL 6526238 (S.D.N.Y. Nov. 5, 2020); United States v. Torres, 464 F. Supp. 3d 651, 654-57 (S.D.N.Y. 2020). On the particular facts of this case, a requirement that Mr. Collado exhaust his remaining issues with the BOP before raising them in this Court—even if that requirement is not imposed by section 3582(c)(1)(A)—is appropriate as a matter of judicial economy, given that Mr. Collado's claims of inadequate access to programming and mental health treatment and services, and of mistreatment and retaliation by prison staff, are precisely the sort of allegations the BOP is in an optimal position to consider (and perhaps remedy) in the first instance, and also are not "reasonably related" to Mr. Collado's exhausted claim based on COVID-19. Cf. Gluzman, 2020 WL 4233049, at *13. In this case, permitting Mr. Collado to "bypass" section 3582(c)(1)(A)'s exhaustion requirement "by presenting one reason for relief to the BOP and another to the Court" would "create an end-run around the exhaustion requirement and deprive the BOP of the opportunity to consider [Mr. Collado's] request." United States v. McNair, 481 F. Supp. 3d 362, 368 (D.N.J. 2020).

Chambers will mail copies of this Memorandum Order and the Order on Motion for Sentence Reduction to Mr. Collado.

SO ORDERED.

Dated: New York, New York
June 21, 2021

/s/ Laura Taylor Swain
LAURA TAYLOR SWAIN
Chief United States District Judge

**Copy to be mailed to**:

Ivan Collado
Reg. No. 71344-054
FCI Ray Brook
Federal Correctional Institution
P.O. Box 900
Ray Brook, NY 12977