UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------x

UNITED STATES OF AMERICA

   -v-                                                   No.  14-CR-731-LTS

IVAN COLLADO,

        Defendant.

-------------------------------------------------------x

MEMORANDUM DECISION AND ORDER

The Court has received Defendant Ivan Collado's renewed motion for a reduction in sentence pursuant to 18 U.S.C. section 3582(c)(1)(A).  (Docket entry no. 186 ("Motion").)[1] On June 28, 2016, upon pleading guilty, Mr. Collado was convicted on one count of conspiracy to commit Hobbs Act robbery, in violation of 18 U.S.C. section 1951.  (Docket entry no. 55.) On December 15, 2016, the Court sentenced him principally to a total of 121 months of imprisonment, to be followed by a three-year supervised release term.  (Docket entry no. 69.) Mr. Collado is currently incarcerated at the Federal Correctional Institution ("FCI") Ray Brook (a medium security correctional facility in New York) and, according to the Bureau of Prisons ("BOP") website, is scheduled to be released from BOP custody on May 3, 2023. BOP, Find an inmate, https://www.bop.gov/inmateloc/ (last visited February 2, 2022).

Mr. Collado, for whom the Court appointed counsel in connection with this application, seeks immediate release from custody, arguing principally that the prison conditions

---

[1] On June 21, 2021, the Court issued a Memorandum Order (docket entry no. 171) denying Mr. Collado's prior motion for a reduction in sentence with prejudice to the extent that motion was based on Mr. Collado's proffered health risks from a possible reinfection of the COVID-19 virus, and without prejudice as to Mr. Collado's other (administratively unexhausted) proffered bases for a reduction in sentence.

he has experienced during the COVID-19 pandemic and his lack of access to special educational services and mental health treatment while in custody (both before and during the pandemic) constitute "extraordinary and compelling reasons" to reduce his sentence. (See docket entry no. 187 ("Def. Mem.").) On January 4, 2022, the Government filed its opposition to the Motion. (Docket entry no. 190 ("Opp.").) On January 11, 2022, Mr. Collado filed his reply. (Docket entry no. 191 ("Reply").)

The Court has considered the parties' submissions and arguments carefully and, for the following reasons, grants Mr. Collado's renewed motion for compassionate release.

## Discussion

Mr. Collado seeks an order directing his compassionate release under 18 U.S.C. section 3582(c)(1)(A), which provides, in relevant part, that:

> the court . . . upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment . . . after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that . . . extraordinary and compelling reasons warrant such a reduction . . . .

18 U.S.C.A. § 3582(c)(1)(A) (Westlaw through P.L. 117-80).[2] The Court therefore considers "the factors set forth in section 3553(a) to the extent that they are applicable," and then considers, in light of those factors, whether the defendant's proffered "extraordinary and compelling reasons" warrant a reduction in the defendant's sentence. The Court may consider

---

2    Mr. Collado has satisfied section 3582(c)(1)(A)'s exhaustion requirement as to the proffered bases for the instant motion for a reduction in sentence. (See Def. Mem. Ex. A.)

"the full slate of extraordinary and compelling reasons that an imprisoned person might bring before [it] in motions for compassionate release" in determining whether those reasons warrant a sentence reduction.  United States v. Brooker, 976 F.3d 228, 237 (2d Cir. 2020).  "The defendant bears the burden of proving that he is entitled to compassionate release under 18 U.S.C. § 3582(c)."  United States v. Phillibert, No. 15-CR-647 (PAE), 2021 WL 3855894, at *2 (S.D.N.Y. Aug. 27, 2021).

The Court's consideration of the section 3553(a) factors[3] at the time of Mr. Collado's sentencing hearing, on December 15, 2016, is reflected in the transcript of that hearing.  (See docket entry no. 70 ("Sentc. Tr.").)  As to the nature and circumstances of the offense, the Court recognized that Mr. Collado "committed four separate, very violent robberies in the course of his participation in the conspiracy to which he has pled guilty and as to three of those robberies, witnesses reported the brandishing of firearms, victims were beaten and bound and threatened and had their possessions forcibly stolen by Mr. Collado and his crew."  (Id. at 45.)  Indeed, Mr. Collado "personally brought guns to these robberies," and personally "provided counter-surveillance equipment such as police radio scanners to be used to monitor radio alerts of robberies in progress."  (Id.)  The Court also recognized, however, that Mr. Collado "grew up

---

[3]    The sentencing factors set forth in 18 U.S.C. section 3553(a) are: "(1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed—(A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner; (3) the kinds of sentences available; (4) the kinds of sentence and the sentencing range . . . ; (5) any pertinent policy statement [issued by the Sentencing Commission in effect on the date the defendant is sentenced]; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense."  18 U.S.C.A. § 3553(a) (Westlaw through P.L. 117-80).

in a dangerous and violent neighborhood," and had "intellectual and mental health challenges that are of a significant and extraordinary nature." (Id. at 46.) Having considered those facts, as well as others identified on the record, including Mr. Collado's "long[ ] prior criminal history" and the support of his "very extensive network of family members and friends," the Court sentenced Mr. Collado to 121 months of imprisonment, to be followed by a three-year term of supervised release. (Id. at 44-49.) Furthermore, in light of Mr. Collado's intellectual and mental health challenges—Mr. Collado is illiterate, and attended special education schooling only through a portion of the ninth grade—the Court included in its judgment a recommendation to the BOP "that the defendant be provided with a thorough mental health evaluation and treatment for his documented cognitive, developmental and mental health issues, including supportive psychotherapy, psycho social rehabilitation and compensatory cognitive training." (Docket entry no. 78 at 2; docket entry no. 126 at 2.)

With these section 3553(a) factors in mind,[4] the Court next considers Mr. Collado's proffered extraordinary and compelling reasons, and whether they warrant a reduction in his sentence. 18 U.S.C.A. § 3582(c)(1)(A).

Mr. Collado's first proffered basis for a reduction in sentence is his experience in custody during the COVID-19 pandemic. Mr. Collado reports that, between March and May 2020, while Mr. Collado was in custody at FCI Fort Dix, he was "locked down" in his unit and not allowed to go outside for recreation. (Def. Mem. Ex. B ("Collado Aff.") at 1.) Mr. Collado was then transferred to FCI Ray Brook, where he reports being locked in his cell "24 hours a

---

[4] The Court also considers reported developments since Mr. Collado's sentencing, discussed below in the context of Mr. Collado's proffered reasons for a reduction in sentence, in connection with its section 3553(a) analysis.

day" except for "sometimes" every three days, when he was let out for up to fifteen minutes to shower and to make phone calls. (Id.)[5] This lockdown eased somewhat, but Mr. Collado was not permitted to go outside for recreation, or provided any educational programming, for another four months. (Id.) In January 2021, during the second major wave of COVID-19 in the northeastern United States, Mr. Collado contracted COVID-19. (Opp. Ex. 1.)

During the COVID-19 pandemic, Mr. Collado's contacts with his family, with whom he has long maintained close ties (see docket entry no. 188-1), have also been curtailed. His father and longtime girlfriend each report that their communication with him has been infrequent during the pandemic (id. at ECF pages 1 & 4), and his girlfriend writes that she has sometimes gone weeks without any contact with Mr. Collado. (Id. at ECF page 1.) Mr. Collado himself states that he has not seen her since 2019. (Collado Aff. at 1.) The family contact appears to have been a particularly important source of comfort and stability for Mr. Collado who, as recognized in the Court's sentencing recommendation, has cognitive, developmental, and mental health issues.

Unfortunately, there is currently another outbreak of COVID-19 at FCI Ray Brook. As of today, the BOP reports 27 COVID-19 cases among inmates and 16 cases among staff at that facility. BOP, COVID-19 Coronavirus, https://www.bop.gov/coronavirus/ (last visited February 2, 2022). FCI Ray Brook is under a "Level 3" modified operational level, the highest such level, meaning that "infection prevention procedure or modification to operations such as inmate programming and services may be made to mitigate the risk and spread of

---

[5]  In the nearly ninety-two months since Mr. Collado was arrested in connection with this case, Mr. Collado has spent time in custody at the Metropolitan Correctional Center in Manhattan, the Metropolitan Detention Center ("MDC") in Brooklyn, the MDC in Philadelphia, FCI Hazelton in West Virginia, FCI Fort Dix in New Jersey, and FCI Ray Brook in New York. (Motion at 18-19; Collado Aff. at 1.)

COVID-19 in accordance with BOP pandemic guidance." Id.  As a result of such modifications, Mr. Collado's experience in custody over the last two years of the pandemic has been more difficult and punishing than the Court anticipated at the time of Mr. Collado's sentencing.

Mr. Collado's second proffered reason for a sentence reduction is his alleged complete lack of access to appropriate training and mental health treatment of the kind recommended by this Court in its judgment in light of Mr. Collado's documented cognitive, developmental, and mental health issues.  (Docket entry no. 78 at 2 (recommending "a thorough mental health evaluation and treatment for [Mr. Collado's] documented cognitive, developmental and mental health issues, including supportive psychotherapy, psycho social rehabilitation and compensatory cognitive training").)  The psychological records submitted by the Government (Opp. Exs. 2-8) reflect that the psychology and psychiatry services at the facilities to which Mr. Collado has been designated have been aware of the recommendations in the PSR and Mr. Collado's treatment history.  These records document, to some degree, evaluations of various aspects of Mr. Collado's mental health and abilities, and reflect diagnostic conclusions.  He has been provided with a variety of antidepressant and psychotropic medications, albeit not the same medications as Mr. Collado was prescribed before being incarcerated (see Collado Aff. at 1; Def. Mem. at 18-21), during much of his time in custody.  Apparently in accordance with BOP protocols, he was provided with regular monthly encounters with psychologists in the early years of his term and thereafter, based on conclusions that the mental health issues diagnosed by the BOP were controlled by the medication and other measures provided, on request.  The records reflect encounters in the later years in response to requests and in connection with time spent in administrative segregation.  There are frequent references to counseling regarding "coping" skills, and some references to the use of cognitive behavioral techniques.  On more than one

occasion, Mr. Collado was given a workbook or other literature and responded that he would be unable to use it because he is illiterate. (Opp. Ex. 2 (at May 13, 2021, Clinical Contact note); Opp. Ex. 5 (at April 13, 2017, Clinical Contact note).) There is no indication of a therapeutic plan other than the provision of medications and encounters when requested, and evaluations of status focus on the control of symptoms.

The only indication in the psychological records of action taken in response to his comments regarding illiteracy, and other notations in the record that he is illiterate, is that a psychologist directed him—two years before his sentencing in this case—to speak with "unit team or education for tutoring." (Opp. Ex. 8 (November 5, 2014, Clinical Contact note).) There is also no indication of any unit or education department action regarding Mr. Collado's illiteracy or learning disability issues. Indeed, while Mr. Collado has been enrolled in a few educational courses during his several years in custody, the vast majority of his hours spent in those courses appear to have been in vocational or standard GED programming rather than any special education programming, and these resources have not yet led to him successfully obtaining his GED nor, it would appear, achieving literacy. (Opp. Ex. 11; Reply at 2.)[6]

When considered together, Mr. Collado's experience of incarceration during the COVID-19 pandemic, his pre-existing cognitive, developmental, and mental health challenges, his relatively limited access to the mental health treatment and cognitive training the Court

---

[6] As the Government notes (Opp. at 5-6), it appears that Mr. Collado has declined enrollment in an anger management course as well as in the Bureau's Challenge Program while in custody. As to the Challenge Program, though, it was Mr. Collado who initially expressed interest in the program, and it is not clear that Mr. Collado—who does not have a documented history of substance abuse (docket entry no. 79 ¶ 124)—would have met the eligibility requirements for that program in any event. (See Opp. Ex. 5.) As to the anger management course offered Mr. Collado in May 2021 (see Opp. Ex. 2), the record does not reflect who recommended Mr. Collado be offered that course, what discussion was had with Mr. Collado about it, or why he declined.

contemplated at the time of sentencing, and the apparent failure of the BOP to address his literacy and learning disability issues collectively amount, in the context of the relatively small portion of his custodial sentence that remains to be served, to extraordinary and compelling reasons warranting a comparatively minor reduction of Mr. Collado's remaining custodial sentence to time served. See, e.g., United States v. Dones, No. 3:18-CR-246-JBA, 2021 WL 6063238, at *3 (D. Conn. Dec. 22, 2021) ("Courts have granted motions for compassionate release based upon the theory that the COVID-19 pandemic has created disproportionately harsh sentences and limited the rehabilitative resources available to incarcerated people.").

In order to ensure that Mr. Collado's sentence continues to reflect the seriousness of his offense, promotes respect for the law, provides just punishment for the offense, affords adequate deterrence, and protects the public, the Court will impose additional special conditions of supervised release requiring Mr. Collado to spend his first twelve months of supervised release on home detention, with location monitoring at the discretion of the Probation Office. Those additional conditions will enable the United States Probation Office to provide Mr. Collado with needed treatment and educational services in the most effective manner, and will allow Mr. Collado's strong network of family and friends (see docket entry nos. 188 & 189) to provide him with assistance in benefiting from these services as he returns to life in the community.

CONCLUSION

For the reasons set forth above, Mr. Collado's renewed motion for compassionate release pursuant to 18 U.S.C. section 3582(c)(1)(A) is granted. Mr. Collado's custodial sentence is hereby shortened to time served plus whatever time is reasonably necessary to facilitate the BOP's safe release of Mr. Collado consistent with any COVID-19 protocols, to be followed by

the previously-imposed three years of supervised release, during which he will be subject to the conditions of supervised release set forth in the amended judgment dated November 26, 2018 (docket entry no. 126) (the "Previously-Imposed Conditions"), as well as these additional special conditions:

> The Defendant must be monitored by the form of location monitoring specified at the discretion of the Probation Office for a period of 12 months and must abide by all technology requirements. The Defendant must pay all or part of the costs of participation in the location monitoring program as directed by the Court and the Probation Officer.
>
> The selected form of location monitoring technology must be utilized to monitor the following restriction on the Defendant's movement in the community as well as other Court-imposed conditions of release: the Defendant is restricted to his residence at all times except for employment; education; religious services; medical, substance use disorder, or mental health treatment; attorney visits; Court appearances; Court-ordered obligations; or other activities as preapproved by the Probation Officer.
>
> Prior to the location monitoring installation the Defendant must self-quarantine in his residence for a period of 14 days.
>
> An Order on Motion for Sentence Reduction Under 18 U.S.C. § 3582(c)(1)(A)

will also be entered.

> This Memorandum Decision and Order resolves docket entry no. 186.

    SO ORDERED.

Dated: New York, New York
       February 2, 2022

                                        /s/ Laura Taylor Swain
                                        LAURA TAYLOR SWAIN
                                        Chief United States District Judge